UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERNEST P. HOWLAND<br><br>        Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.<br><br>        Defendant. | C.A. No. 04 CV 11466 (RWZ)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") submits the following memorandum in support of its Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff Ernest Howland ("Plaintiff" or "Howland") is a former Home Depot employee who brings this action alleging retaliatory discharge in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq*. According to Howland, Home Depot terminated his employment after he requested a one week leave of absence to care for his wife and infant son following his birth. Additionally, Plaintiff claims he suffered intentional infliction of emotional distress as a result of the alleged retaliatory discharge.

Home Depot now moves for summary judgment on both claims raised in Plaintiff's Complaint. As grounds for its motion and as more fully set forth herein, summary judgment is appropriately granted because all of the actions taken by Home Depot were based upon

legitimate, non-discriminatory reasons that warrant no inference of retaliation. The undisputed facts reveal that Howland's termination came after he was placed on <u>three</u> consecutive, documented performance improvement periods; a fact rendering Plaintiff incapable of proving his termination for poor performance was a pretext for retaliatory discharge. Further, Plaintiff's claim for intentional infliction of emotional distress is barred by the Massachusetts Workers' Compensation statute. As such, judgment should enter in favor of Defendant on both causes of action.

## **FACTS**[1]

Defendant refers to and incorporates herein its Statement of Undisputed Material Facts, submitted herewith.[2]

## **ARGUMENT**

### I.  **STANDARD OF REVIEW**

"Summary judgment is appropriate when 'a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.'" *Morgan v. Driscoll*, 2002 WL 15695 *2 (D.Mass. 2002) (Zobel) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; only a genuine issue of material fact is effective in this regard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Such a "genuine" issue exists only when there is evidence from which a reasonable jury could return a verdict for the non-moving party. *See Lagone v. C. Walsh, Inc.*,

---

[1] Defendants admit these facts solely for purposes of the instant Motion.

[2] Defendants will reference their Statement of Undisputed Material Facts as "Facts" with citation to the relevant paragraph.

864 F.Supp. 233, 235 (D.Mass. 1994) (Zobel) (citing Fed.R.Civ.P. 56); *Anderson*, 477 U.S. at 257.

To demonstrate the existence of a genuine issue capable of defeating summary judgment, Plaintiff, as the non-moving party, must present specific, competent evidence of his claims. *Worlds v. Thermal Indus., Inc.*, 928 F.Supp. 115, 118 (D.Mass. 1996) (Gorton) (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. den'd*, 504 U.S. 985 (1992)); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Simply relying upon mere conclusory allegations or denials is insufficient to defeat a motion for summary judgment. *See Carreiro v. Frank*, 789 F.Supp. 465, 469 (D.Mass. 1992) (Zobel) (citing *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 895 (1st Cir. 1988) (internal citation omitted)); *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12 (1st Cir. 1999) (court will resolve genuine fact dispute in favor of non-moving party but will not "indulge rank speculation or unsupportable hyperbole"). Even "in an employment discrimination case such as the instant case, summary judgment may be appropriate where the nonmoving party relies 'upon conclusory allegations, improbable inferences, and unsupported speculation' as to any essential element of his claim.'" *Worlds*, 928 F.Supp. at 118 (quoting *Byrd v. Ronayne*, 61 F.3d 1026, 1030 (1st Cir. 1995)).

In the present action, Plaintiff has failed to articulate specific facts sufficient to defeat Defendant's instant motion. Because Howland has no reasonable expectation of proving the essential elements of his claims, no genuine issues of material fact remain in dispute, and summary judgment is appropriately entered for Defendant.

## II.     PLAINTIFF FAILED TO SUSTAIN HIS BURDEN ON THE CLAIM OF RETALIATORY DISCHARGE

By claiming retaliatory discharge for seeking leave under the FMLA, Howland bears the ultimate burden of proving that his request for a leave of absence was, at the very least, a

motivating factor in the his termination and that he would not have been terminated but for the request for a one week leave of absence. *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998). Because Howland has no direct evidence of retaliatory discharge, the Court must evaluate his claims utilizing the three part *McDonnell Douglas* burden shifting analysis. *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To survive summary judgment, Howland must establish a *prima facie* case of retaliation by demonstrating "that: 1) he availed himself of a protected right under the FMLA; 2) he was adversely affected by an employment decision; [and] 3) there is a causal connection between the employee's protected activity [requesting leave] and the employer's adverse employment action [termination]." *Hodgens*, 144 F.3d at 161 (citing *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)). After Plaintiff has established his *prima facie* case, Home Depot must rebut the presumption that Howland's termination was in retaliation for requesting a one week leave of absence under the FMLA. *Hodgens*, 144 F.3d at 160 (citing *McDonnell Douglas*, 411 U.S. at 802).

To rebut the presumption of unlawful retaliation, Home Depot need only "'articulate some legitimate, nondiscriminatory reason for [Howland's] [termination].'" *Id.* Once Home Depot offers a legitimate non-discriminatory reason for the termination, "the presumption of discrimination drops from the case" because <u>the burden of proof always remains with Plaintiff</u>. *Id.* at 161 (emphasis added) (citing *McDonnell Douglas*, 411 U.S. at 804; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Plaintiff must then produce evidence that Home Depot's "proffered justification is a mere pretext concealing [Defendant's] true discriminatory motive." *El Kouni v. Tr. of Boston Univ.*, 169 F.Supp.2d 1, 3 (D.Mass. 2001) (Harrington) (citations omitted). "Plaintiff cannot

4

meet this burden merely by casting doubt upon the defendants' articulated reasons for dismissal. Rather [Howland] must go beyond the pleadings and set forth specific, definite facts to rebut the defendants' justification and show affirmatively that the reason given by defendants is a sham intended to cover up the defendants' real discriminatory motive." *Worlds*, 928 F.Supp. at 121 (citing *Dea v. Look*, 810 F.2d 12, 15 (1st Cir. 1987) and *Mesnick*, 950 F.2d at 824). Only after demonstrating to the Court that a reasonable juror could credit his version of events and find intentional discrimination based upon his attempt to avail himself of leave under the FMLA[3] can Howland survive a motion for summary judgment. *See Smith v. Stratus Comp., Inc.*, 40 F.3d 11, 16 (1st Cir. 1994), *cert den'd*., 514 U.S. 1108 (1995).

### A.   PLAINTIFF'S TERMINATION WAS A RESULT OF CONTINUED POOR PERFORMANCE

Assuming, *arguendo*, that Howland requested FMLA leave and that he can establish a *prima facie* case of retaliation,[4] Plaintiff remains incapable of defeating Defendant's Motion for Summary Judgment because Home Depot indisputably terminated Plaintiff for his continued, documented poor performance.

---

[3] It is important to note that Plaintiff brings only one claim under the FMLA, retaliatory discharge after availing himself of his right to leave. No where in his Complaint and no where in his deposition testimony does Plaintiff argue that his legitimate request for FMLA leave was denied in violation of the FMLA, nor does he argue that Defendant failed to make him aware of his right to leave under the FMLA. (Facts, ¶ 34). Accordingly, Defendant limits it argument to the only issue raised in Plaintiff's Complaint and the only issue before this Court – whether Howland's termination was retaliation for requesting a one week leave of absence under the FMLA.

[4] For purposes of the instant Motion only, Home Depot will assume, *arguendo*, that Howland can make out a *prima facie case* of retaliation by establishing that he actually requested FMLA leave. Should Plaintiff survive summary judgment, Home Depot reserves it right to argue that Howland never requested leave under the FMLA.

1.     PLAINTIFF'S PERFORMANCE FAILED TO IMPROVE OVER THE COURSE OF EIGHT MONTHS AND THREE PERFORMANCE IMPROVEMENT PERIODS

Though Plaintiff enjoyed favorable reviews, promotions, and raises during the first two years of his tenure with Home Depot, his performance began to deteriorate substantially in August 2003. (Facts, ¶ 6). On August 27, 2003, he received a discipline notice for violating safety policies and procedures, and on September 8, 2003, he was confronted by Ed Boylan ("Boylan"), an assistant store manager, about his department's disheveled state. (Facts, ¶¶ 6-7). On September 24, 2003, the store's District Manager reported to the store for an announced inspection. (Facts, ¶ 9). Howland's department was in such bad condition that management took pictures. (Facts, ¶¶ 9-10). As a result of his department's deplorable condition during an announced inspection, Howland received a second performance review by Boylan who rated Plaintiff's overall performance an 'I' (the lowest possible score) and his leadership abilities a '4' (the lowest possible score). (Facts, ¶¶ 11-12). As a result of his poor performance and in accord with Home Depot policy, Boylan placed Howland on a performance improvement plan. (Facts, ¶ 12).

It is undeniable that over the next seven months, from September 2003 through April 2004, Howland's performance continued to suffer. (Facts, ¶¶ 6-12, 15-17, 19-20). After his performance failed to adequately improve during the first performance period, he was placed on a second performance improvement plan in late November 2003. (Facts, ¶ 15). Because Plaintiff experienced a workers' compensation injury that took him away from the store during a sizable portion of his second sixty day performance improvement plan, Home Depot, in an over abundance of fairness, decided to place Howland on a third performance improvement plan that

6

began on February 10, 2004. (Facts, ¶¶ 18-19).  Despite documented efforts[5] by Boylan of Home Depot's efforts to counsel Plaintiff on his performance, Plaintiff failed to substantially improve. (Facts, ¶¶ 6-12, 5-17, 19-20).  After <u>seven months</u> on a performance improvement plan with little to no improvement, Howland was permanently removed from his position with Home Depot on April 15, 2004, <u>five days</u> after his <u>third</u> sixty day performance improvement plan ended. (Facts, ¶ 21).

"An employee <u>lawfully</u> may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (emphasis added) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).  There can be no doubt that Howland's April 15, 2004 termination was long overdue; even suggesting that Plaintiff was on the verge of termination when he allegedly requested FMLA leave sometime between April 13 and April 15, 2004, understates the reality of the seven months of documented, inadequate performance.  Howland can mount no logical argument contending that his performance was otherwise sufficient, particularly since the First Circuit has resolved that "[n]egative performance evaluations [are] not themselves adverse employment actions." *Keeler*, 238 F.3d at 9 (citing *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998)).  Because "[a]n employee who requests FMLA leave would have no greater protection

---

[5] During his deposition, Howland testified that he could not recall all of the counseling sessions documented on the "Performance Discussion Tracking Forms." (Facts, ¶ 20 FN 3).  He further testified that sometime after his termination, a Home Depot employee told him that Boylan was "filling out paperwork with [his] name on it." (Facts, ¶ 20).  Plaintiff contends that this is evidence that these counseling sessions never took place, but were 'conjured up' after the fact.  As discussed in section II.C.(1) of the instant Motion, this testimony is hearsay and cannot be introduced as evidence. *See Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 153 F.Supp.2d 62, 69 (D.Mass. 2001) (Ponsor) (citing *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir. 1999)).  As such, the documents speak for themselves and are admissible as evidence that the Boylan had the counseling sessions with Plaintiff. *See id*.

against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request," to dispute Home Depot's proof that his termination was based on poor performance, Howland must demonstrate that his performance was, in fact, satisfactory, and the eight months of documented, failed performance were a complete and absolute fabrication. *Arban*, 345 F.3d at 401 (citing *Gunnell*, 152 F.3d at 1262).

Moreover, given that "the targeted animus of the FMLA is not an arbitrary bias, but an animus derived purely from the prospect of economic loss," the notion that middle-management at the Avon, Massachusetts Home Depot was so concerned about Home Depot's overall profits that it terminated Howland to avoid the economic loss associated with his leave borders on the absurd. *Frankel v. U. S. Postal Serv.*, 96 F.Supp.2d 19, 24 (D.Mass. 2000) (Gertner) (holding that an employee's few missed days of work "did not even approach the type of economic threat to the employer contemplated by the drafters of the FMLA" when granting the defendant employer's motion for summary judgment on a FMLA retaliation claim) (citing *Byrd*, 61 F.3d at 1030). Accordingly, Home Depot has incontrovertibly established that Howland's termination was due to his continued inadequate performance.

> **B.    PLAINTIFF CANNOT DEMONSTRATE THAT HIS TERMINATION FOR POOR PERFORMANCE WAS A PRETEXT FOR RETALIATORY DISCHARGE**

Though Plaintiff may believe that his termination was pretext for retaliatory discharge, his argument relies "upon conclusory allegations, improbable inferences, and unsupported speculation." *Frankel*, 96 F.Supp.2d at 24 (citing *Byrd*, 61 F.3d at 1030). To overcome the overwhelming documented evidence of his failed performance, Plaintiff essentially asks this Court to believe that eight months prior to his termination, Home Depot began an elaborate scheme of creating false performance reviews in an effort to mask the fact that it would, eight

months in the future, terminate Plaintiff for requesting a one or two week FMLA leave of absence that Plaintiff had never before indicated he might take and ostensibly had no idea he would need to take (unless his wife was aware of her pregnancy within three weeks of conception). "It would be completely irrational for [Home Depot] to take such drastic steps against [Howland] … simply because [he asked for] a few days [off] of work." *Id.* at 27. (granting summary judgment in favor of the defendant employer on a FMLA claim because it would be irrational to think that the defendant employer would suspend and order the plaintiff to attend a fitness for duty evaluation because of the economic loss it suffered when she missed a few days of work due to FMLA leave after suffering a miscarriage). Moreover, since Howland admits that he did not begin to seek FMLA leave until sometime between April 13 and April 15, 2004, it is highly unlikely (and Plaintiff has made no allegation) that Shea knew about the request for FMLA leave making it impossible for Shea to have intentionally terminated Howland in retaliation for requesting FMLA leave. (Facts, ¶¶ 28, 31-34). As a result, Howland has failed to produce sufficient evidence for a jury to reasonably infer pretext, and his claim under the FMLA fails as a matter of law. *Id*. at 23-24 (citing *Smith*, 40 F.3d at 15).

        1.    THE COMMENT ATTRIBUTED TO BILL SHEA IS DOUBLE HEARSAY

During his deposition, Plaintiff testified that Ramsdale told him that upon approaching Shea about Howland's vacation request, Shea told Ramsdale that "[Howland] wasn't going to [get the requested leave] because when [Shea's] wife had a baby, [Shea] only took one day off [from work]." (Facts). "The First Circuit has held that a statement must, at a minimum, be *unambiguous* in order to be considered direct evidence of discrimination" because "[a] statement that plausibly can be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Weston-*

9

*Smith v. Cooley Dickinson Hosp., Inc.*, 153 F.Supp.2d 62, 69 (D.Mass. 2001) (Ponsor) (emphasis in original) (citing *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir. 1999)).

The question of whether the statement attributed to Shea should be treated as direct or circumstantial evidence of retaliation is irrelevant because the statement is double hearsay; Howland is attempting to testify about statements Ramsdale made to him in a conversation in which Shea made statements to Ramsdale. *See id.* at 69.  Because hearsay evidence, particularly double hearsay, is inadmissible, it "therefore 'cannot be taken into account for purposes of the summary judgment calculus.'" *Id.* (citing *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 615 (1st Cir. 2000)).  Accordingly, Shea's alleged statement is inadmissible and cannot be used as evidence of retaliatory intent to overcome Defendant's argument that Howland's termination was a result of eight months of documented poor performance. *See id.*

    2.    PLAINTIFF'S TERMINATION FOR POOR PERFORMANCE IS EVIDENCED BY THE TEMPORAL PROXIMITY BETWEEN PLAINTIFF'S TERMINATION AND THE <u>CULMINATION OF HIS THIRD PERFORMANCE IMPROVEMENT PERIOD</u>

Temporal proximity is a device typically utilized by a plaintiff to suggest pretext. *See Skrjanc v. Great Lakes Pwr. Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (string citation omitted).  In this instance, however, the temporal proximity between Howland's termination on April 15, 2004 and the end of his third sixty day performance improvement period on April 10, 2004 only frustrates Plaintiff's effort to argue pretext.  The fact that Plaintiff was terminated five days after his third improvement period ended suggests that he simply failed to improve; not that Home Depot fabricated a non-discriminatory rationale for Plaintiff's alleged retaliatory termination.  Too the contrary, such fabrication would be the assumption if the time between the end of the performance period and termination was great. *See id.* (termination one month after FMLA leave request alone is insufficient to establish pretext).  In this instance, temporal

proximity leads the trier of fact to the obvious result – Howland's performance failed to substantially improve at the close of his third, consecutive improvement period over the course of seven months; a fact that resulted in termination.

### 3. PLAINTIFF WAS REQUIRED TO GIVE HOME DEPOT 30 DAYS NOTICE OF HIS INTENT TO TAKE LEAVE UNDER THE FMLA

"There is no dispute that, when leave is foreseeable, an employer has wide latitude to <u>delay or deny</u> medical leave without proper [FMLA] certification." *Toro v. Mastex Indus.*, 32 F.Supp.2d 25, 29 (D.Mass. 1999) (Ponsor) (emphasis added) (citing 29 C.F.R. § 825.312(a)). Plaintiff knew in January 2004 that his wife would deliver their baby on April 23, 2004. (Facts). He can make no argument that a potential request for leave was anything other than foreseeable. *See* 29 U.S.C.A § 2612(e)(1) (expected birth is foreseeable). Nevertheless, Howland testified that he waited until the last possible moment to discuss FMLA leave with Home Depot. (Facts). Assuming, *arguendo*, that Howland adequately requested leave under the statute, Home Depot was within its right to <u>outright deny</u> Howland's untimely request. *See Toro*, 32 F.Supp.2d at 29. As such, it is nonsensical to argue that Howland's termination was in retaliation for requesting FMLA leave because Howland, through his own inaction in waiting until nine days prior to the scheduled birth of his child, had already rendered himself ineligible for leave and protection under the statute. Accordingly, Howland cannot rebut Home Depot's non-discriminatory rationale for his termination.

### III. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS BARRED BY THE EXCLUSIVITY PROVISION OF THE WORKERS' COMPENSATION ACT

Plaintiff argues that he suffered emotional distress as a direct result of his termination. (Complaint, ¶ 7). There can be no question that Howland's termination was an act that occurred in the course of his employment in furtherance of Home Depot's best interest. It has long-been

11

settled that claims of intentional infliction of emotional distress arising out of the normal course of employment are barred by the workers' compensation statute as against an employer. *Hart v. Verizon Comm., Inc.*, 2002 WL 31027429 * 1 (D.Mass. 2002) (Zobel) (citing *Brown v. Nutter, McClennen & Fish*, 696 N.E.2d 953, 956 (Mass. App. Ct. 1998)); *see Clarke v. KY Fried Chicken, Inc.*, 57 F.3d 21, 27-29 (1st Cir. 1995).

      Throughout the course of discovery, Plaintiff made no argument to suggest that he believed his termination was caused by a lone, rogue employee acting outside the scope of his employment. (Facts, ¶ 34). Plaintiff stayed true to this position even though he testified that he believed his performance reviews by Boylan, the employee who ultimately informed Plaintiff of his termination, were unfair. (Facts, ¶¶ 11, 20-21, 34). Moreover, Howland testified that he believed Boylan was "forced" by management to terminate him because Howland believed Shea, as the store manager, should have been present for his termination. (Facts, ¶¶ 34-35). However, Bleakney testified that Home Depot policy required that both the store manager (Shea) and the human resources manager (Bleakney) discuss and approve terminations prior to instructing the soon-to-be terminated employee's assistant manager that he must terminate the employee so that both the store manager and the human resources manager would be available to the terminated employee if the employee felt the termination was unfair. (Facts, ¶ 35). Accordingly, Plaintiff's termination was in absolute accord with Home Depot policy and unquestionably occurred in the normal course of business for the benefit of Home Depot. As such, his claim of intentional infliction of emotional distress is barred by the exclusivity provision of the Workers' Compensation Act and must be dismissed as a matter of law. *See Hart*, 2002 WL 31027429 *1; *Green v. Wymann-Gordon Co.*, 422 Mass. 551, 558-60 (1996) (establishing that common law claims, including those for negligent and intentional infliction of emotional distress, are barred

by the exclusivity provision of the Workers' Compensation Act where the alleged injury is shown to have arisen out of and in the course of the plaintiff's employment).

## **CONCLUSION**

Given Plaintiff's inability to demonstrate that Home Depot's termination for poor performance was pretext for retaliatory discharge and in light of the fact that Plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provision of the Workers' Compensation Act, Home Depot respectfully requests that its Motion for Summary Judgment be granted, that Plaintiff's claims against it be dismissed in their entirety with prejudice, and for such other and further relief as this Court deems appropriate. To rule otherwise requires the Court to believe that eight months prior to his request for FMLA leave, Home Depot had the foresight to issue negative reviews to Plaintiff that would result, three times over, in Howland's placement on a performance improvement plan such that when he requested FMLA leave eight months later to attend to the birth of a child he did not know had been conceived, Home Depot could fire him in retaliation for requesting the leave, all the while relying on its intricately fabricated "poor performance" ruse to establish a non-discriminatory alibi.

        Respectfully submitted,

        HOME DEPOT, U.S.A., INC.

        By its attorneys

        ____/s/ Leah M. Moore_____
        Robert P. Joy (BBO No. 254820)
        Leah M. Moore (BBO No. 658217)
        MORGAN, BROWN & JOY, LLP
        200 State Street
        Boston, Massachusetts  02109
        617-523-6666 (phone)
        617-367-3125 (fax)

Date:  July 15, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff, Charles E. Berg, OFFICE OF ALBERT E. GRADY, 226 Montello Street, Brockton, MA 02401, by first-class mail this 15th day of July 2005.

        _/s/ Leah M. Moore_____
                          Leah M. Moore