UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04 CV 11466 (RWZ)

ERNEST P. HOWLAND,

        Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

        Defendant.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, plaintiff submits the following material facts which he intends to prove at trial:[1]

1. In April, 2004, plaintiff was employed as Department Head of the Floors and Walls and the Window Decor departments at The Home Depot store in Avon, Massachusetts. (Exhibit A: Declaration of Ernest Howland [ "Howland" ] at ¶ 2).

2. In April, 2004, plaintiff was informed by Sylvia Ramsdale, the Scheduler at the Avon store, that Bill Shea, the Store Manager, had turned down his request for a week's vacation time to coincide with his wife's due date because, according to Ramsdale, Shea told her that "Ernie's not getting a week off. . . When my wife had a baby I only took a

---

1. For purposes of this motion plaintiff also adopts the Defendant's Statement of Undisputed Facts as well, but reserves the right to controvert many of them at trial.

1

day [off]." (Howland at ¶ 3).[2]

3. On April 14, 2004, plaintiff spoke to Kenneth Bleakney, the Human Resources Manager at the Avon Store and requested leave under the Family Medical Leave Act to coincide with his wife's expected due date of April 23, 2004. Bleakney told plaintiff that he would get plaintiff the necessary forms the following day. (Howland at ¶ 4).

4. On the following day, April 15, 2004, when plaintiff reported to work he discovered that the overnight crew had pulled most of the stock from the overhead shelves in his departments, and only in his departments, and left his aisles in complete disarray. (Howland at ¶ 5).

5. Plaintiff knows of no operational or business reason why the overhead stock had been taken down in his departments and only in his departments on April 15, 2004, and left in the aisles. (Howland at ¶ 6).

6. On April 15, 2004, plaintiff was informed by his Assistant Manager, Ed Boylan, that he was being terminated because Shea was unhappy with the condition of the aisles in his departments. (Howland at ¶ 7).

7. Boylan's duties as an Assistant Manager of the Avon store included direct supervision over the work of the various department heads, including plaintiff. (Boylan at ¶ 4).

8. Between September, 2003 and April, 2004, excepting for the period of time plaintiff was

---

2. Defendant in section II.C.(1) of its Memorandum of Law mischaracterizes these comments as "double hearsay". They are not hearsay but at both levels are clearly admissible as party opponent admissions under F.R.E. 801 (d) (2) (D), being statements made by the employer's agents concerning a matter within the scope of their employment, made while they were so employed. See e.g. Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60, 66-67 (1st Cir. 2002); Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235 (2d Cir. 1995).

      temporarily out of work due to a shoulder injury, Boylan worked with plaintiff on improving plaintiff's job performance and Boylan noted slow but satisfactory improvement in plaintiff's job performance over that period of time. (Boylan at ¶ 5).

9. As of mid-April, 2004, Boylan felt that plaintiff's job performance was improving. (Boylan at ¶ 6).

10. In 2004 it was the usual practice at The Home Depot that Boylan, as Assistant Manager, be consulted prior to a decision being made to terminate a department head whose work Boylan supervised. (Boylan at ¶ 7).

11. On or about April 15, 2004, Boylan was called to a meeting with Shea concerning plaintiff and Shea stated that he was unhappy with the progress plaintiff was making and that it was "time to let him go". Shea and Boylan then met with Bleakney. Boylan was directed by Shea and Bleakney to tell plaintiff that he was terminated, which Boylan did that same day. (Boylan at ¶ 8).

12. Some time later in 2004, Bleakney called Boylan to a meeting and told Boylan that Bleakney would be meeting with lawyers concerning plaintiff's termination and Bleakney needed to document plaintiff's file regarding meetings that Boylan had had with plaintiff during 2003 and 2004. At that meeting Boylan observed Bleakney create several Performance Discussion Tracking Forms relating to meetings that had taken place with plaintiff in 2003 and in 2004 before plaintiff was terminated. (Boylan at ¶ 9).

Dated: <u>July 29, 2005</u>

                                                  Respectfully submitted,
                                                  Ernest P. Howland,
                                                  By his attorneys,

*[signature: Charles E. Berg]*
Charles E. Berg (BBO # 038580)
Office of Albert E. Grady
226 Montello Street
Brockton, MA 02301
Tel: 508-583-8562
Fax: 508-586-0734

---

**CERTIFICATE OF SERVICE**

I, Charles E. Berg, attorney of record for the above-named plaintiff ~~defendant~~ hereby certify that on the date set forth above I served a true copy of the attached document upon all the parties hereto by ~~delivery email facsimile certified mail/return receipt requested~~ first class postage addressed to each ~~party appearing pro se and to the~~ attorney of record for each other party.

*[signature: Charles E. Berg]*
Charles E. Berg  (BBO# 038580)

---

C:\OFFICE\WPWIN\WPDOCS\CEBDOCS\CLIENT\HOWLANDE\R56FACTS.WPD

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04 CV 11466 (RWZ)

|  |  |
|---|---|
| ERNEST P. HOWLAND, | ) |
| Plaintiff, | ) |
| v. | ) |
| HOME DEPOT U.S.A., INC., | ) |
| Defendant. | ) |

EXHIBIT A

## DECLARATION OF ERNEST P. HOWLAND

Now comes ERNEST P. HOWLAND and declares as follows:

1. My name is Ernest P. Howland and I am of legal age and reside at 83 Ford Street, Brockton, Massachusetts.

2. In April, 2004, I was employed as Department Head of the Floors and Walls and the Window Decor departments at The Home Depot store in Avon, Massachusetts.

3. In April, 2004, I was told by Sylvia Ramsdale, the Scheduler at the Avon store, that Bill Shea, the Store Manager, had turned down my request for a week vacation time to coincide with my wife's due date of April 23, 2004, because, according to Ramsdale, Shea told her that "Ernie's not getting a week off... When my wife had a baby I only took a day [off]."

4. On April 14, 2004, I spoke to Kenneth Bleakney, the Human Resources Manager at the Avon Store and requested leave under the Family Medical Leave Act to coincide with my wife's expected due date of April 23, 2004. Bleakney told me that he would get me the

Page 1 of 2

A-1

necessary forms the following day.

5. On the following day, April 15, 2004, when I reported to work I discovered that the overnight crew had pulled most of the stock from the overhead shelves in my departments, and only in my departments, and left my aisles in complete disarray.

6. I know of no operational or business reason why the overhead stock had been taken down in my departments.

7. On April 15, 2004, my Assistant Manager, Ed Boylan, told me that I was being terminated because Bill Shea was unhappy with the condition of the aisles in my departments.

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct. Executed at Brockton, Massachusetts on July 29, 2005.

Ernest P. Howland

A-2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04 CV 11466 (RWZ)

ERNEST P. HOWLAND,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

    Defendant.

EXHIBIT B

### DECLARATION OF EDWARD BOYLAN

Now comes EDWARD BOYLAN and declares as follows:

1. My name is Edward Boylan and I am of legal age and reside at 38 S. Walnut Street, Mansfield, Massachusetts.

2. In April, 2004, I was employed by The Home Depot as an Assistant Manager of its Avon, Massachusetts store.

3. I no longer work for The Home Depot but am presently employed by Lowe's at its Brockton, Massachusetts store.

4. My duties as an Assistant Manager of the Avon store included the direct supervision over the work of the various department heads, including Ernest Howland [ "Ernie"].

5. Between September, 2003 and April, 2004, excepting for the period of time Ernie was temporarily out of work due to a shoulder injury, I worked with Ernie on improving his job performance and I noted slow but satisfactory improvement in his performance over that period of time.

Page 1 of 2

B-1

6. As of mid-April, 2004, Ernie's job performance was improving.

7. In 2004 it was the usual practice at The Home Depot that I, as Assistant Manager, be consulted prior to a decision being made to terminate a department head whose work I supervised.

8. On or about April 15, 2004, I was called to a meeting with William ["Bill"] Shea, the Store Manager of the Avon store, concerning Ernie and Bill stated that he was unhappy with the progress Ernie was making and that it was time to let him go. Bill then met with Kenneth ["Ken"] Bleakney, the Human Resources Manager of the Avon store. I was directed by Bill and Ken to tell Ernie that he was terminated, which I did that same day.

9. Some time later in 2004, Ken called me to a meeting and told me that he would be meeting with lawyers concerning Ernie's termination and needed to document Ernie's file regarding meetings that I had with Ernie during 2003 and 2004. At that meeting I observed Ken create several Performance Discussion Tracking Forms relating to meetings that had taken place with Ernie in 2003 and in 2004 before Ernie was terminated.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct. Executed at Brockton, Massachusetts on July 26, 2005.

_____
Edward Boylan

B-2