UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERNEST P. HOWLAND<br><br>       Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.<br><br>       Defendant. | C.A. No. 04 CV 11466 (RWZ)<br><br>**REPLY MEMORANDUM<br>IN SUPPORT OF DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT** |

Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") hereby submits its Reply Memorandum in response to Plaintiff Ernest Howland's ("Howland" or "Plaintiff") Opposition to Defendant's Motion for Summary Judgment ("Opposition").

**PRELIMINARY STATEMENT**

While Plaintiff may have produced evidence sufficient to create a question of material fact relating to whether he was entitled to a leave of absence under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq.*, he has failed to produce a shred of evidence sufficient to establish a material question of fact relating to the allegation that he was terminated in retaliation for requesting leave under the FMLA – the only remaining[1] allegation in Plaintiff's Complaint, and the only issue appropriately before this Court.

Nevertheless, even if this Court were to accept Plaintiff's conclusory allegations and improbable inferences as truth, Home Depot must prevail on its Motion for Summary Judgment

---

[1] In his Opposition, Plaintiff conceded that Count II of his Complaint alleging intentional infliction of emotional distress was barred by the workers' compensation exclusivity provision. (*See* Opposition, p. 1). Accordingly, Count I of Plaintiff's Complaint alleging retaliation in violation of the FMLA is the only claim remaining and as such, is the only claim addressed in Defendant's Reply. (*See id.*).

because Plaintiff has: 1) admitted the truth of every statement contained in Defendant's Statement of Material Facts, thereby admitting that his job performance failed to significantly improve; 2) failed to establish that the store manager who made the decision to terminate Plaintiff was aware of his request for FMLA leave; and 3) failed to offer evidence sufficient to support a finding that his termination for poor performance was a pretext for retaliatory discharge.

## FACTS

In support of its Motion for Summary Judgment, Home Depot submitted its Statement of Undisputed Material Facts ("Defendant's Facts") which contains all facts pertinent to the present motion. Plaintiff has admitted to these facts by virtue of his adoption of them. *See* Plaintiff's Statement of Material Facts ("Plaintiff's Facts"), p. 1, FN 1; *Stonkus v. City of Brockton Sch. Dept.*, 322 F.3d 97, 102 (1st Cir. 2003) (deeming the plaintiff to have admitted to the defendants undisputed facts because the plaintiff failed to controvert them).

Despite adopting Defendant's Facts, Plaintiff submitted a separate, procedurally defective[2] Statement of Material Facts which purports to set forth additional facts for the Court's consideration. Although Defendant disputes a majority of the additional facts presented by Plaintiff, these disputed facts are immaterial to the instant motion. Even if all of the facts alleged in Plaintiff's Facts are accepted as true by the Court, summary judgment must still be granted because "Plaintiff has utterly failed to establish a genuine issue of material fact as to the legitimacy of [Home Depot's] proffered explanation" for his termination – seven months of continued, unsatisfactory performance. *Deslauriers v. Dole Packaged Foods Co.*, 2001 WL826400 * 3 (D.Mass 2001) (Zobel, J.).

---

[2] Plaintiff's Facts are procedurally defective in their failure to include a statement of contested issues of material fact. The remedy for Plaintiff's failure to contest is acceptance by the Court of Defendant's Facts as true, which Plaintiff has already conceded through adoption of Defendant's Facts. *See Laracuente v. Chase Manhattan Bank*, 891 F.2d 17 (1st Cir. 1989); Plaintiff's Facts, p. 1, FN 1.

## **REPLY**

**I.     PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION**

The third prong of a *prima facie* case of retaliation requires a plaintiff to demonstrate a causal connection between a plaintiff's protected activity, here a request for leave, and an employer's adverse action, in this case Howland's termination. *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). Therefore, to substantiate his claim that seven consecutive months of continuous, documented performance problems are a "post hac fabrication" devised to cover up store manager William Shea's ("Shea") discharge in retaliation for Howland's request for FMLA leave from the store's human resources manager Kenneth Bleakney ("Bleakney"), Howland must demonstrate that Shea had knowledge of his request for leave. *See Lewis v. Gillette Co.*, 1993 WL 291771 *4 (D.Mass. 1993) (Wolf, J.) ("absent a showing that [decision-makers] had knowledge that [the plaintiff] engaged in a protected activity, there can be no causal connection") (citing *Reynolds v. Arizona,* 992 F.2d 1220 (9th Cir. 1993) (accused employer's knowledge of plaintiff's participation in a protected activity is essential to causal link)); *Nunnally v. Dept. of Public Welfare*, 1989 WL 47369 * 38 (D.Mass. 1989) (Saris, M.J.) ("without evidence of knowledge on the part of the decision-makers, no causal connection could be established to link plaintiff's activities with the employer's actions").

Howland has made no allegation nor offered any evidence of Shea's knowledge of his request. His Opposition is conspicuously devoid of any allegation that Shea was <u>ever</u> made aware of Howland's request for FMLA leave from Bleakney, let alone an allegation that Howland communicated with Bleakney about FMLA leave prior to Shea's decision to terminate him. The absence of any such allegation is fatal to Plaintiff's ability to set forth a *prima facie* case of retaliatory discharge, and thus, Howland's claim fails as a matter of law. *See Lewis*, 1993 WL 291771 at *4 (citing *Reynolds*, 992 F.2d 1220); *Nunnally,* 1989 WL 47369 at * 38.

## II.   PLAINTIFF IS UNABLE TO OVERCOME SUMMARY JUDGMENT BECAUSE HE HAS FAILED TO MEET HIS BURDEN OF PROOF

Even if the Court viewed Plaintiff's proffered evidence as sufficient to establish a *prima facie* case of retaliatory termination for requesting leave under the FMLA, no genuine of material fact remains to be tried as Howland has offered insufficient evidence to support an inference of pretext. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Plaintiff has failed to offer evidence sufficient to suggest that a jury could properly enter a verdict in his favor, and his claim must be dismissed as a matter of law. *See De Arteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir. 1988) (citing *Anderson*, 477 U.S. at 251-52).

### A.   THE STATEMENT ATTRIBUTED TO SHEA

#### 1.   THE STATEMENT ATTRIBUTED TO SHEA IS INADMISSIBLE DOUBLE HEARSAY

The only "evidence" relied upon by Plaintiff in support of his claim that his termination was retaliatory is inadmissible double hearsay. (*See* Opposition, pp. 2, 5).  In arguing for the statement's admissibility, Plaintiff misstates the First Circuit's ruling in *Weston-Smith v. Cooley Dickinson Hospital, Inc.* 292 F.3d 60 (1st Cir. 2002); Opposition, p. 2 FN 1.  There, the First Circuit clearly affirms Judge Ponsor's "conclu[sion] that Weston-Smith's testimony about Neumann's supposed statement about what Bowles purportedly said is double hearsay and inadmissible" where Weston-Smith attempted to testify about her supervisor's comment to Weston-Smith's replacement regarding why Weston-Smith was terminated as relayed to Weston-Smith by her replacement. *Weston-Smith*, 292 F.3d at 66.  Moreover, in its next sentence in the decision, the First Circuit states, "Weston-Smith <u>does not challenge that conclusion</u> on appeal." *Id.*  Accordingly, Plaintiff's reliance on Weston-Smith for the proposition that double hearsay is admissible is misplaced. *See id*.

Like Weston-Smith, Howland attempts "to testify about statements [Ramsdale] made to [him] regarding a conversation in which [Shea] made statements to [Ramsdale]." *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 153 F.Supp.2d 62, 69 (D.Mass. 2001) (Ponsor, J.).  Plaintiff argues

4

that the double hearsay statement falls under the 801(d)(2)(D) party-opponent admission exception. (Opposition, p. 2 FN 1). While this assertion is accurate in principle, to apply to the situation at hand, both portions of the double hearsay statement must meet the 801(d)(2)(D) exception identified by Plaintiff for the statement to become admissible. *See Pakizegi v. First Nat. Bank of Boston*, 831 F.Supp. 901, 909 (D.Mass. 1993) (Gorton, J.). To qualify for the 801(d)(2)(D) exception, Plaintiff must "lay a foundation to show that an otherwise excludable statement by [the store's scheduler Sylvia Ramsdale] relates to a matter within the scope of [her] employment." *Id.* (citing *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir. 1986)); *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986)).

Because Sylvia Ramsdale ("Ramsdale") was an hourly employee who performed administrative tasks with no supervisory responsibilities of any kind, Plaintiff cannot demonstrate that the decision to grant or deny an assistant store manager's request for one week of vacation fell within the scope of Ramsdale's employ. (Defendant's Facts, ¶ 26). Indeed, the very fact that Ramsdale could not approve Howland's vacation request at the time he approached her about it is demonstrative of the fact that decisions about the vacation of assistant store managers were not hers to make. Moreover, Howland's testimony about the statement Ramsdale attributes to Shea is self-serving, wholly uncorroborated, was never the source of a complaint by Howland though he made other complaints, and reeks of the very fraud the Rules of Evidence attempt to overcome. Accordingly, the statement attributed to Shea by Howland through Ramsdale does not fall within the 801(d)(2)(D) exception, is inadmissible hearsay, and thus cannot be considered at summary judgment. *See Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 615 (1st Cir. 2000). To rule otherwise would allow any administrative, hourly employee with no supervisory responsibilities to bind an employer through out of court statements about decisions over which she had neither real nor apparent authority or control.

        2.       THE STATEMENT ATTRIBUTED TO SHEA IS NOT DIRECT EVIDENCE

Were the Court to rule the double hearsay statement admissible, the statement attributed to Shea nevertheless fails to rise to the level of direct evidence of retaliatory discharge because it is inherently ambiguous. The First Circuit has definitively ruled that direct evidence "consists of statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214, F.3d 57, (1st Cir. 2000) (referencing as examples *Taylor v. Virginia Union Univ.,* 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *cert. den'd*, 528 U.S. 1189 (2000); *Lambert v. Ackerley,* 180 F.3d 997, 1008-09 (9th Cir. 1999) (en banc), *cert. den'd*, 528 U.S. 1116 (2000); *Thomas v. NFL Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997)). Accordingly, a comment made regarding a request for <u>vacation leave</u> is not direct evidence of retaliatory termination because of a request for <u>FMLA leave</u>. *See id*.

Moreover, the double hearsay statement attributed to Shea fails to suggest that but for Howland's request for FMLA leave, Home Depot would not have terminated him – a fatal flaw in Howland's ability to articulate a cognizable claim of retaliatory discharge. *See* Section I, *supra*; *Lukacinsky v. Panasonic Serv. Co.*, 2004 WL 2915347 * 26 (D.Mass. 2004) (Saylor, J.) (causal connection may be established if the alleged retaliatory acts are close in time to the plaintiff's protected activity) (referencing as examples *Ruffino v. State Street Bank & Trust Co ,* 908 F.Supp. 1019, 1046 (D.Mass. 1995); *Wright v. CompUSA,* 352 F.3d 472, 475 (1st Cir. 2003)); *Barker v. Int'l Paper Co.*, 993 F.Supp. 10, 16 (D.Me. 1998) (temporal proximity raised inference of retaliation). Accordingly, the only evidence of temporal proximity appropriately before the Court is that between the end of Plaintiff's third, consecutive sixty day performance on April 10, 2004 and his subsequent termination just five days later on April 15, 2004; a reality supporting Home Depot's contention that Howland was terminated for his failure to adequately improve. (Defendant's Facts, ¶ 21).

B.   **HOWLAND'S DECLARATION CONTRADICTS HIS DEPOSITION TESTIMONY**

The First Circuit has definitively ruled that a plaintiff cannot create a disputed issue of fact and avoid summary judgment by submitting a declaration that contradicts his earlier sworn testimony. *See Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 44, 54 (1st Cir. 2000). Despite clear, straight forward requests during his deposition, Howland failed to recount or recall the scenario attested to in his declaration whereby "the overnight crew had pulled most of the stock from the overhead shelves and left my aisles in complete disarray." (Howland Declaration, ¶¶ 5,7). Moreover, Howland testified in his deposition that Boylan "told me to take a seat and told me[,] You wanted [sic] your review? And I says [sic], Yeah. And he says, Well, he says, your review is not good. It has its ups and its downs. We're going to have to let you go. That was my review. Q. [by defense counsel] And that was the entirety of the conversation? A. Yeah." (Deposition of Ernest Howland ("Howland Deposition"), p. 177, annexed to Declaration of Leah M. Moore at Tab A). In contrast, Howland's Declaration states that Boylan explained that the reason for Howland's termination was "because Bill Shea was unhappy with the condition of the aisles in my department." (Howland Declaration, ¶ 7). There can be no question that the "facts" asserted in Howland's Declaration contradict his prior sworn testimony and were designed for the sole purpose of attempting to create issues of fact where none exist. Because Howland gave "clear answers to unambiguous questions" during his deposition, the contradictory testimony offered in his Declaration without explanation for its change must be disregarded. *See Colantuoni v. Calcafni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994) (internal citations omitted).

C.   **BOYLAN'S DECLARATION DOES NOT SUPPORT AN INFERENCE OF RETALIATION**

Howland seeks to overcome the obvious reason for his termination, continued unsatisfactory performance, by submitting an affidavit from the assistant manager to whom he reported over the course of his three consecutive performance improvement plans. However, the Boylan Declaration not only fails to create a material question of fact, it fully supports Home Depot's contention that

7

Howland's termination was a result of his failure to adequately improve after seven consecutive months and three performance improvement plans.

      1.    HOWLAND'S PERFORMANCE FAILED TO IMPROVE UNTIL MID-APRIL 2004

Plaintiff, through Boylan's declaration, argues that his performance was improving in mid-April 2004 – a date on or near April 15, 2004 – the very date of Plaintiff's termination. (Opposition p. 5; Defendant's Facts, ¶ 21). Presumably, Plaintiff is attempting to argue that the temporal proximity between his termination on April 15, 2004 and Boylan's assertion that Plaintiff's performance was just beginning to improve in mid-April 2004 establishes that Howland's termination was retaliatory. "However, chronological proximity, standing alone, does not establish causality where [as here] '[t]he larger picture undercuts a claim of causation.'" *Lukacinsky*, 2004 WL 2915347 at * 26 (citing *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997)). Howland was given three, sixty day opportunities over the course of seven months to satisfactorily improve his performance. (Defendant's Facts, ¶¶ 6-21; Plaintiff's Facts, ¶ 8). Howland admits that he failed to show improvement of any kind until the last days of his third performance improvement plan. (Boylan Declaration, ¶¶ 8-9). It therefore logically follows that Home Depot concluded after providing Howland with seven months of individualized attention from Shea and Boylan in an effort to foster the requisite improvement, the fact that Howland was just beginning to show improvement at the close of the third performance period in mid-April 2004 was clear and convincing evidence that Howland was simply incapable of performing at the level Home Depot required from its department managers.

Even if this Court were to find the temporal proximity of Plaintiff's alleged improvement and subsequent termination were somehow persuasive of pretext, the fact that Howland waited until nine days before the scheduled birth of his child to request FMLA leave rendered Home Depot within its right to delay or outright deny Howland's request for leave. *See Toro v. Mastex Indus.*, 32 F.Supp.2d 25, 29 (D.Mass. 1999) (Ponsor, J.) (citing 29 CFR § 825.312(a)). Accordingly, it is nonsensical to

believe that Shea's motivation for Howland's termination was not the seven months of poor performance; rather it was a request for leave to the human resources manager of which there is no evidence or allegation Shea was aware and to which Howland was not entitled.

### 2. HOWLAND TESTIFIED THAT HE RECALLED THE MARCH 22, 2004 AND MARCH 26, 2004 DISCUSSIONS DOCUMENTED BY BLEAKNEY

Plaintiff attempts to justify his assertion that Bleakney "'papered' plaintiff's personnel file after plaintiff brought legal action" by mischaracterizing Boylan's Declaration. (*See* Opposition, p. 7). In his declaration, Boylan indicates that some time in 2004 after Howland's termination, Boylan and Bleakney had a conversation regarding documentation of meetings Boylan had with Howland regarding Howland's performance. (*See* Boylan Declaration, ¶ 9). Boylan states that during the discussion, he observed Bleakney completing Performance Discussion Tracking Forms relating to meetings that had taken place with Howland regarding his performance in 2003 and 2004. (*See id.*). However, Boylan's Declaration is completely devoid of any allegation that any of the documented discussions did not take place. Likewise, Boylan's Declaration is also completely devoid of any allegation that the conversation between Bleakney and Boylan was caused by the filing of the instant lawsuit. The absence of any such accusation speaks to the reality that the events assumed in Plaintiff's Opposition never occurred.

According to Bleakney, he drafted the March 22 and 26, 2004, Performance Discussion Tracking Form indicating that on March 22, he, Boylan, Shea, and Howland walked Howland's department noting areas where improvement was still required, and on March 26, the same managers conducted a second walk with Howland where "improvement was noted … but improvement was still needed." (Declaration of Kenneth Bleakney, ¶¶ 3-5, attached hereto as Exhibit A; March 22 and 26, 2004 Performance Discussion Tracking Form, annexed to Declaration of Leah M. Moore at Tab K). Though Plaintiff's Opposition implies that these discussions never took place, Howland testified that "now that I've seen that [the March 22 and 26, 2004 Performance Discussion Tracking Forms] ...

9

I remember something on that. … I remember a walk telling me that it [the department] was looking better … [but] I cannot recall who was there." (Howland Deposition, pp. 162-163).

Were the Court to ignore Plaintiff's prior testimony and assume that the documents were created after Howland's termination and in response to the filing of the instant lawsuit, there is no reason to believe that the conversations as recounted in the Performance Discussion Tracking Form did not occur as described, both by Plaintiff in his deposition and as indicated on the face of the document. Moreover, during his deposition, Howland initially testified that it was <u>Boylan</u> who was responsible for fabricating documents, yet in his Opposition, Plaintiff proffers Boylan's Declaration as evidence that <u>Bleakney</u> fabricated documents. (Defendant's Fact, p. 6 FN 3; Opposition, pp. 3, 6). Plaintiff's finger-pointing is nothing more than rank speculation belied by his own testimony authenticating the document. Despite Plaintiff's intent to the contrary, the Boylan Declaration only bolsters Home Depot's non-discriminatory rationale for Howland's termination by corroborating Howland's continued unsatisfactory performance and insufficient improvement as well as the efforts by Home Depot to support Howland's development and improvement.

## **CONCLUSION**

Given that Plaintiff has 1) conceded that his claim for intentional infliction of emotional distress fails as a matter of law; 2) admitted that his performance failed to significantly improve; 3) failed to establish that Shea knew of his request for FMLA leave; and 4) failed to offer evidence sufficient to support a finding that his termination for poor performance was pretext for retaliatory discharge, Home Depot respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

        Respectfully submitted,

        HOME DEPOT, U.S.A., INC.

        By its attorneys


        \_\_\_/s/ Leah M. Moore_____
        Robert P. Joy (BBO No. 254820)
        Leah M. Moore (BBO No. 658217)
        MORGAN, BROWN & JOY, LLP
        200 State Street
        Boston, Massachusetts  02109
        617-523-6666 (phone)
        617-367-3125 (fax)

Date:  August 31, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff, Charles E. Berg, OFFICE OF ALBERT E. GRADY, 226 Montello Street, Brockton, MA 02401, by first-class mail this 31st day of August 2005.

        \_/s/ Leah M. Moore_____
        Leah M. Moore