UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERNEST P. HOWLAND<br><br>         Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.<br><br>         Defendant. | C.A. No. 04 CV 11466 (RWZ)<br><br>Date:   Wednesday, September 7, 2005<br>Time:   2:00 p.m.<br>Judge:  The Honorable Rya W. Zobel |

**JOINT PRE-TRIAL MEMORANDUM**
**PURSUANT TO LOCAL RULE 16.5**

Pursuant to Local Rule 16.5(D) of the United States District Court for the District of Massachusetts and in compliance with the Court's Order of March 28, 2005, Ernest P. Howland ("Howland" or "Plaintiff") and Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") (together with Howland, the "Parties"), hereby submit their Joint Statement in the above captioned matter.

**1.    Concise Summary of the Evidence**

   a.    <u>Plaintiff's Summary of the Evidence</u>

In April, 2004, Ernest Howland was employed as department manager (floors and walls as well as window decor departments) for The Home Depot, Store #2671, in Avon, Massachusetts. His wife, Rachel, was scheduled to give birth by cesarean section to their third child on April 23, 2004 and anticipated a prolonged recovery time due to ongoing medical problems. Ernest had requested paid time off to coincide with Rachel's scheduled delivery date. This request was turned down by Bill Shea, the store manager, with the comment by

Shea that he "*only took one day off*" when his wife had a baby. Ernest then approached Home Depot's human resources person and was advised of his right to leave under the Family Medical Leave Act (FMLA), and was promised the necessary paperwork to fill out on the following day. On the following day plaintiff arrived at work to find that the night shift had pulled the stock off the shelves in his departments, and only in his departments, and left the aisles in disarray. Plaintiff was called into the office by his assistant store manager and told that he was terminated because the store manager was upset by the condition of the shelves and aisles in his departments. Plaintiff knows of no reason why the night shift pulled the stock from the shelves in his departments. The assistant manager, who was plaintiff's direct supervisor and who ordinarily would be consulted before one of his department heads was terminated, was not consulted but was told by the store manager to terminate plaintiff. The assistant manager had been working with plaintiff to improve his performance and felt that plaintiff had been improving as of the day he was told to terminate him. The assistant manager, some time after plaintiff had been terminated, was called into the human resources office and told by the human resources manager that he was preparing to meet with company lawyers regarding plaintiff's termination and needed to document plaintiff's file with regard to meetings between the assistant manager and plaintiff. The human resources manager was then observed to complete so-called Performance Discussion Tracking Forms concerning meetings between the assistant manager and plaintiff, presumably in order to provide documentation in the file to justify the decision to terminate plaintiff. Plaintiff testified at his deposition that he did not recall all of the meetings supposedly documented on Performance Discussion Tracking Forms found in his personnel file.

At the time of his termination Ernest had been employed on a full-time basis by The Home Depot for over two years and had progressed from part-time to full-time associate to assistant department head to being department head of two departments. He was earning approximately $746 per week. As a result of the termination Ernest's employee benefits were canceled, including his group health benefits. Ernest's monthly housing and other expenses of

course continued after his termination and he was financially unable to pay the health insurance monthly premium cost of $891.74 to maintain medical coverage for his wife and family. Rachel was admitted to the Newton-Wellesley Hospital on April 23, 2005, where she gave birth to a son, Jacob.   The hospital and doctor bills associated with that hospitalization, as well as routine follow-up and well child doctor visits are attached as Table A.

Ernest, despite his best efforts at seeking employment, remained out of work from April 16, 2004, until September 27, 2004, when he took a similar job with Ocean State Job Lot, which requires him to work considerably longer hours for roughly the same wages, but without the benefits package that was provided at the Home Depot.   During the 24-week period when he was unemployed, Ernest fell behind in his mortgage and utility bills and was forced to borrow from relatives and to incur late charges and adverse entries on his credit report.   These economic losses are set out below:

Ernest's actual losses as a result of his termination are as follows:

| | | |
|---|---|---|
| a. | Back Pay Wage Loss  $746/week times 24 weeks (4/16/04 to 9/27/04) | $17,904[1] |
| b. | Front Pay (loss of benefits) (present value) (estimated) | $19,624 |
| c. | Uninsured medical expenses (Rachel and minor sons) (See Table A) | $5,000 |
| d. | Other economic consequences (estimated) | $5,000 |
| e. | Emotional distress / mental anguish | $20,000.00 |
| | Total Actual Losses | $67,528 |

---

[1] Ernest received unemployment benefits of $11,776 during this period.

     b.     <u>Defendant's Summary of the Evidence</u>

Plaintiff began working for the Avon Home Depot in October 2001. He worked as a department supervisor of the wall and floor covering department from December 2002 until the time of his termination on April 15, 2004.

Beginning in late August 2003, Plaintiff's performance began to deteriorate. On September 8, 2003, he was confronted by the assistant store manager about his department's disheveled state. Howland received his first documented unfavorable review on September 14, 2003. On September 24, 2003, the Avon store's District Manager performed an announced inspection of the store. Howland's department was in such bad condition that management took pictures. As a result of his department's deplorable condition, Howland received a second documented performance review. His overall performance and leadership abilities were both rated as the lowest possible store, and in accord with Home Depot policy, Plaintiff was placed on a performance improvement plan.

Between being placed on the performance improvement plan in September 2003 and receipt of his next performance review, Plaintiff admits that the assistant store manager and store manager communicated with him about how to improve. On November 7, 2003, the assistant store manager again provided Plaintiff with a documented review of his performance. This review mimicked the September 24, 2003 review rating Howland's performance as the lowest possible score. Because Plaintiff failed to significantly improve, management decided to place him on a second sixty day performance improvement plan. The decision to extend the performance improvement plan in lieu of termination was made because management believed Howland was capable of managing the department based on the positive feedback he received prior to August 2003. In its continued effort to help Plaintiff improve, management removed

several of Howland's supervisory duties following receipt of the November 2003 review so that Plaintiff could focus on improving the overall appearance of the wall and floor covering department.

In late November 2003, Howland suffered a workers' compensation injury. As a result, he was out of work from November 20, 2003 until January 8, 2004 when he returned in a part time capacity. Howland did not resume his full time duties until late January 2004. Because it was impossible to fairly track and rate Howland's improvement during the sixty days after his November 7, 2003 review due to the workers' compensation absence, Howland received a fourth documented review by the assistant store manager on February 10, 2004 and was placed on his third, consecutive sixty day performance improvement plan. Like the prior reviews, Howland's February 2004 review rated his performance as the lowest possible score.

Despite placing him on three performance improvement plans, reducing his duties, and counseling by management, Howland's performance failed to significantly improve. Performance discussion tracking forms dated March 1, March 22, March 26, and April 1, 2004 indicate that although Howland's performance improved, it still remained below acceptable standards. After seven months on a performance improvement plan with little improvement, Howland was permanently removed from his position with Home Depot on April 15, 2004, sixty-five days after he was placed on his third sixty day performance improvement plan.

According to Howland, in April 2004, he requested FMLA leave in order to care for his wife who was undergoing a difficult pregnancy as a result of uterine cancer she defeated several years prior. Because of Mrs. Howland's medical history, she was required to deliver by cesarean section, and Plaintiff testified that in late January 2004, he and his wife selected April 23, 2004 as the delivery date. Home Depot denies that Plaintiff requested FMLA leave and

5

states that the reason for Plaintiff's termination was his continued failure to adequately improve his performance despite being placed on three, consecutive, documented sixty day performance improve plans over the course of seven months.

After notification of his termination on April 15, 2004, Howland claims that he took time to attend to the birth of his son. According to his deposition testimony, Plaintiff began to search for employment in May 2004 and obtained two offers of employment in late August or early September 2004. During this time, Howland received unemployment compensation. By the end of September 2004, Howland had accepted a salaried position with potential advancement opportunities paying $37,500 per year/$711 per week plus benefits, earning more per hour and receiving more benefits than he did at the Home Depot.

**2.    Facts Established by Pleadings or Stipulation**

1. Howland's wife gave birth by cesarean section on April 23, 2004.

2. Howland and his wife selected April 23, 2004 as the date for cesarean section sometime in late January or early February 2004.

3. Howland earned $14.59 per hour as a Home Depot associate at the time of his discharge on April 15, 2004.

**3.    Contested Issues of Fact**

1. What was Home Depot's motive in terminating plaintiff in April, 2004?

2. Are the reasons given by Home Depot for terminating plaintiff pretext?

3. Did Howland request leave under the FMLA?

4. Assuming Howland requested FMLA leave, was Howland entitled to an FMLA leave that was to begin less than one week from the date of his request?

    5.    Assuming Howland requested FMLA leave and was entitled to an FMLA leave that was to begin less than one week from the date of his request, was Howland terminated for exercising his rights under the FMLA?

    6.    Is Home Depot liable for any economic loss resulting from Howland's termination?

    7.    Assuming Home Depot is liable for economic loss resulting from Howland's termination, for what economic loss is Home Depot liable?

**4.**    **Jurisdictional Questions**

    There are no jurisdictional questions.

**5.**    **Pending Motions**

    Defendant's Motion for Summary Judgment has been briefed, filed, and is awaiting hearing.

**6.**    **Issues of Law**

    1.    Are medical expenses incurred by an employee and his dependents after the employee's termination in violation of the FMLA recoverable as "any wages, salary, employment benefits or other compensation denied or lost to an employee by reason of the violation" when the employee failed to exercise his rights under COBRA? 29 U.S.C. § 2617(a)(1)(A)?

    2.    Reserved by Plaintiff.

    3.    Reserved by Defendant.

**7.**    **Requested Amendments to the Pleadings**

    There are no requested amendments to the pleadings.

**8.**     **Additional Matters**

Currently, there are no additional matters.

**9.**     **Length of Trial**

The Parties anticipate a three day trial.

**10.**     **Witnesses**

1. Ernest Howland
   83 Ford Street
   Brockton, Massachusetts

2. Rachel Howland
   83 Ford Street
   Brockton, Massachusetts

3. Edward Boylan
   38 S. Walnut Street
   Mansfield, Massachusetts.

4. William Shea
   The Home Depot
   60 Stockwell Drive
   Avon, Massachusetts

5. Kenneth Bleakney
   The Home Depot
   60 Stockwell Drive
   Avon, Massachusetts

6. Sylvia Ramsdale
   The Home Depot
   60 Stockwell Drive
   Avon, Massachusetts

7. Christine Gouldsky
   The Home Depot
   60 Stockwell Drive
   Avon, Massachusetts

8.   One or more Human Resource - type witness from Ocean State Job Lot, Plaintiff's present employer, who will testify as to plaintiff's current and likely future salary and benefits package.

9.   Plaintiff reserves his right to designate an economic expert to testify as to the present value of his future "front pay" loss measured by the disparity between his current salary and benefit package and his likely pay and benefit package at Home Depot. Defendant objects to such an expert as Plaintiff failed to disclose the expert in advance of the June 1, 2005 deadline and failed to supplement his response to Defendant's discovery requests seeking expert information. Further, Defendant reserves its right to any expert testimony in rebuttal to expert testimony Plaintiff is allowed to present.

10.  Defendant reserves the right to supplement this witness list.

**11.   Proposed Exhibits**

   a.   Plaintiff's Proposed Exhibits

      1.   Medical Bills from Rachel Howland and children

      2.   Personnel File for Ernest Howland maintained by Home Depot

      3.   Plaintiff's federal income tax returns 2003-2005

   b.   Defendant's Proposed Exhibits

      1.   August 27, 2003 Discipline Process Tracking Notice issued to Ernest Howland.

      2.   September 8 and 17, 2003 Performance Discussion Tracking Form for Ernest Howland.

      3.   September 14, 2003 Performance and Development Summary issued to Ernest Howland.

      4.   September 24, 2003 photographs taken of Ernest Howland's Department in the Avon, Massachusetts Home Depot.

      5.   September 24, 2003 Performance and Development Summary issued to Ernest Howland.

      6.   November 10, 2003 Performance and Development Summary issued to Ernest Howland.

7.  November 19, 2003 Performance Discussion Tracking Form for Ernest Howland incorrectly dated November 19, 2004.

8.  February 10, 2004 Performance and Development Summary issued to Ernest Howland.

9.  March 1, 2004 Performance Discussion Tracking Form for Ernest Howland.

10. March 22 and 26, 2004 Performance Discussion Tracking Form for Ernest Howland.

11. April 1, 2004 Performance Discussion Tracking Form for Ernest Howland.

12. April 15, 2004 Termination Notice issued to Ernest Howland.

13. Home Depot AAP/EEO Training Activity Log from August 2003 through December 2004.

14. Defendant reserves the right to use any and all exhibits listed by Plaintiff.

15. Defendant reserves the right to supplement its list of exhibits.


**12. Parties Objections to Evidence**

1.  To the extent Plaintiff intends to introduce expert evidence at trial, Defendant objects to the use of an expert as Plaintiff failed to disclose any expert by the June 1, 2005 discovery deadline and failed to supplement his response to Defendant's discovery requests seeking expert information.

2.  To the extent Plaintiff intends to introduce exhibits at trial that were requested during the course of discovery but never produced, Defendant will object to the use of such documents as exhibits.

3.  Defendant objects to the admission of a double hearsay statement Plaintiff attributes to Home Depot store manager William Shea ("Shea") as conveyed to Plaintiff by store

scheduler Sylvia Ramdale ("Ramsdale") based upon a conversation between Ramsdale and Shea. Plaintiff alleges that Ramsdale told him of a conversation she had with Shea where Shea denied Plaintiff's request for vacation leave saying that "[Howland] wasn't going to [get the requested vacation time] because when [Shea's] wife had a baby, [Shea] only took one day off [from work].

Plaintiff's position is that the statements are in fact not "hearsay" at all but at both levels (store manager and scheduler) are clearly admissible as party opponent admissions under *Fed. R. Evid.* 801 (d) (2) (D), being statements made by the employer's agents concerning matters within the scope of their employment, made while they were so employed. *See e.g. Weston-Smith v. Cooley Dickinson Hospital, Inc.*, 282 F.3d 60, 66-67 (1st Cir. 2002); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1238 n.1 (2d Cir. 1995) (multi-level admissions by employees admissible if they concern matters within the scope of each employee's duties). *See Fed R. Evid*. 805 (hearsay within hearsay admissible if each part falls within an exception).

Defendant argues that Plaintiff misstates the First Circuit's ruling in *Weston-Smith*. 292 F.3d 60. There, the First Circuit clearly affirms Judge Ponsor's "conclu[sion] that Weston-Smith's testimony about Neumann's supposed statement about what Bowles purportedly said is double hearsay and inadmissible" where Weston-Smith attempted to testify about her supervisor's comment to Weston-Smith's replacement regarding why Weston-Smith was terminated as relayed to Weston-Smith by her replacement. *Weston-Smith*, 292 F.3d at 66. Moreover, in its next sentence in the decision, the First Circuit states, "Weston-Smith does not challenge that conclusion on appeal." *Id.* (emphasis added).

Like Weston-Smith, Howland attempts "to testify about statements [Ramsdale] made to [him] regarding a conversation in which [Shea] made statements to [Ramsdale]." *Weston-Smith*

11

*v. Cooley Dickinson Hosp., Inc.*, 153 F.Supp.2d 62, 69 (D.Mass. 2001) (Ponsor, J.). Plaintiff argues that the double hearsay statement falls under the 801(d)(2)(D) party-opponent admission exception. While this assertion is accurate in principle, to apply to the situation at hand, both portions of the double hearsay statement must meet the 801(d)(2)(D) exception identified by Plaintiff for the statement to become admissible. *See Pakizegi v. First Nat. Bank of Boston*, 831 F.Supp. 901, 909 (D.Mass. 1993) (Gorton, J.). To qualify for the 801(d)(2)(D) exception, Plaintiff must "lay a foundation to show that an otherwise excludable statement by [the store's scheduler Sylvia Ramsdale] relates to a matter within the scope of [her] employment." *Id.* (citing *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir. 1986)); *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986)).

Because Ramsdale was an hourly employee who performed administrative tasks with no supervisory responsibilities of any kind, Plaintiff cannot demonstrate that the decision to grant or deny an assistant store manager's request for one week of vacation fell within the scope of Ramsdale's employment. Indeed, the very fact that Ramsdale could not approve Howland's vacation request at the time he approached her about it is demonstrative of the fact that decisions about the vacation of assistant store managers were not hers to make. Moreover, Howland's testimony about the statement Ramsdale attributes to Shea is self-serving, wholly uncorroborated, was never the source of a complaint by Howland though he made other complaints, and reeks of the very fraud the Rules of Evidence attempt to overcome. The statement attributed to Shea by Howland through Ramsdale does not fall within the 801(d)(2)(D) exception, is inadmissible hearsay, and thus cannot be considered at summary judgment. *See Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 615 (1st Cir. 2000).

Respectfully submitted,

| | |
|---|---|
| OFFICE OF ALBERT E. GRADY | MORGAN, BROWN & JOY, LLP |
| Attorney for Plaintiff | Attorneys for Defendant |
| 226 Montello Street | 200 State Street |
| Brockton, MA 02401 | Boston, MA 02109 |
| 508-583-8562 | 617-523-6666 |
| | |
| By: s/ Charles E. Berg | By: s/ Leah M. Moore |
|     Albert E. Grady, Esq. |     Robert P. Joy, Esq. |
|     Charles E. Berg, Esq. |     Leah M. Moore, Esq. |

Dated: September 2, 2005